## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCNAMARA,
RAYMOND ROSS, ANDREW
SCHULTZ, JOSH SMOTHERMAN,
DONALD SHAW, DAVID
HAMILTON, LAURENCE WHITE,
et al.,

              Plaintiffs,

    v.

GENERAL MOTORS LLC,

              Defendant.

Case No.: 2:25-cv-02410-PD

## **GENERAL MOTORS LLC'S UNOPPOSED MOTION TO TRANSFER**

Pursuant to 28 U.S.C. § 1404(a), General Motors LLC ("GM") respectfully moves this Court to transfer this action to the United States District Court for the Eastern District of Michigan given the legal and factual overlap between this case and three other matters pending in that court: *Powell v. General Motors LLC*, 4:25-cv-10479-SDK-KGA (E.D. Mich.); *Rittereiser et al. v. General Motors LLC*, 4:25-cv-11481-SDK-KGA (E.D. Mich.); and *Houchin, et al. v. General Motors LLC*, 2:25-cv-11462-RJW-APP (E.D. Mich.). GM conferred with Plaintiffs, and Plaintiffs do not oppose this Motion.

## BACKGROUND

On February 18, 2025, a putative class action was filed in the Eastern District of Michigan alleging a defect in certain model year 2019-2024 Chevrolet vehicles and model year 2021-2024 Chevrolet, GMC, and Cadillac vehicles equipped with a 6.2-liter L87 V8 engine ("Class Vehicles") and seeking to represent purchasers and lessees in 11 states.[1] On April 3, 2025, a second putative class action was filed in the Northern District of Georgia on behalf of a nationwide class of all purchasers and lessees of the Class Vehicles alleging the same defects in the L87 engine and asserting overlapping claims.[2]

On April 25, 2025, GM announced a voluntary recall of approximately 600,000 model year 2021-2024 Cadillac Escalade and Escalade ESV; Chevrolet Silverado 1500, Suburban, and Tahoe; and GMC Sierra 1500, Yukon, and Yukon EX vehicles equipped with a 6.2L V8 gas engine, which includes most of the putative Class Vehicles in these cases. ECF No. 1, Compl. ¶ 8. Amended complaints and additional actions quickly followed the recall announcement. The Amended Complaint in *Powell* seeks certification of a nationwide class of purchasers and lessees of the Class Vehicles, as well as eight state-specific subclasses and a multi-state consumer fraud class.[3]  Additional related cases were also filed, including two

---

[1] *Powell v. Gen. Motors LLC*, 4:25-cv-10479-SDK-KGA (E.D. Mich.), ECF No. 1.

[2] *Ramirez Hernandez v. Gen. Motors LLC*, 2:25-cv-00085-RWS (N.D. Ga.).

[3] *Powell*, 4:25-cv-10479-SDK-KGA (E.D. Mich.), ECF No. 15.

more actions in Eastern District of Michigan;[4] three actions in the Eastern District of Pennsylvania (including this action);[5] and an action in the Northern District of Ohio.[6] The eight currently pending lawsuits all assert nearly identical claims based on the same alleged defect in the L87 engine, on behalf of putative nationwide classes and subclasses of purchasers and lessees of the Class Vehicles from states across the country.

On May 29, 2025, GM and the plaintiffs in the *Houchin* and *Rittereiser* actions in the Eastern District of Michigan filed joint requests to have those cases reassigned to the judge overseeing the first-filed *Powell* action; *Rittereiser* was reassigned on June 4, 2025,[7] and reassignment of *Houchin* is expected to follow.  To conserve judicial and party resources, and to avoid the risk of inconsistent rulings, GM seeks to transfer the other remaining related cases to the Eastern District of Michigan, where they can be consolidated with *Powell*. Plaintiffs in Pennsylvania, Georgia, and Ohio have all consented to transferring their cases to the Eastern District of Michigan.

---

[4] *Houchin v. Gen. Motors LLC*, 2:25-cv-11462 (E.D. Mich.); *Rittereiser v. Gen. Motors, LLC*, 4:25-cv-11481 (E.D. Mich.).

[5] *McNamara v. Gen. Motors LLC*, 2:25-cv-02410 (E.D. Pa.); *Wrice-Scott v. Gen. Motors, LLC*, 2:25-cv-02623 (E.D. Pa.); *Muhammad v. Gen. Motors, LLC*, 2:25-cv-2655 (E.D. Pa.).

[6] *Hecht v. Gen. Motors, LLC*, 1:25-cv-01004 (N.D. Ohio).

[7] *Rittereiser*, 4:25-cv-11481 (E.D. Mich.), ECF No. 10 (Order Reassigning Case).

## LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The purpose behind § 1404(a) is to prevent unnecessary inconvenience and expense to parties, witnesses, and the public." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]'") (citation omitted).

To prevail on a motion under Section 1404(a), the movant must generally establish: (1) an adequate alternative forum is available and (2) the private and public interests weigh in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Once a court determines that venue would be proper in another district, the court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Simmens v. Coca Cola Co.*, No. CIVA 07-668, 2007 WL 2007977, at *1 (E.D. Pa. July 5, 2007) (quoting *Jumara*, 55 F.3d at 879).

"Private interests" include plaintiffs' forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. *Jumara*, at 879. "Public interests" include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

## ARGUMENT

Plaintiffs do not oppose this Motion to Transfer. Considering the overlap in factual allegations, putative classes, and claims, consolidating this action and all related actions in the Eastern District of Michigan will help eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

These facts easily satisfy this Circuit's two-part analysis used to evaluate § 1404(a) motions to transfer: This action could have been brought in Michigan, where GM is subject to general personal jurisdiction. And convenience, efficiency, and the interest of justice weigh heavily in favor of transfer.

5

A.    **The Convenience of the Witnesses and Parties Favor Transfer.**

Transfer to the Eastern District of Michigan would be convenient for the witnesses and parties. GM is headquartered in that District and key witnesses are located there. In contrast, only two of the seven named plaintiffs in this case are located in Pennsylvania. *See, e.g.*, *Koster v. Lumbermen's Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). If these related cases are not consolidated, GM's witnesses would be forced to testify on the same facts in both this action and the *Powell* action (not to mention the other six actions), meaning that more witnesses would be inconvenienced were this duplicative action to remain in Pennsylvania. *See, e.g.*, *Panitch v. Quaker Oats Co.*, No. CV 16-4586, 2017 WL 1333285, at *7 (E.D. Pa. Apr. 5, 2017)*.* (finding convenience weighed in favor of transfer where "requiring [defendant] to defend materially identical suits in two districts would inevitably lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall almost entirely on the company).

B.    **The Location of the Relevant Documents and Locus of Operative Facts Favor Transfer.**

The place of the alleged wrong and location of the relevant documents here also weigh in favor of transfer. GM is headquartered in the Eastern District of

Michigan, and there is no dispute that central decisions relating to the design, manufacturing, and marketing of the putative Class Vehicles emanated from that District. *Panitch*, 2017 WL 1333285, at \*6 ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.") (quoting *Ayling v. Travelers Prop. Cas. Corp.*, No. 99-3243, 1999 WL 994403, at \*5 (E.D. Pa. Oct. 28, 1999)); *Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192 (E.D. Pa. 1982).

### C.   Trial Efficiency and the Interests of Justice Favor Transfer.

Section 1404(a) transfer is rooted in principles of judicial economy. *See Cont'l Grain*, 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). "The presence of related cases in the transferee forum is a strong factor in favor of transfer." *Simmens*, 2007 WL 2007977, at \*2 (citing *Schiller-Pfeiffer, Inc. v. County Home Prods., Inc.*, 2004 U.S. Dist. LEXIS 24180, \*30 (E.D. Pa. Dec. 1, 2004) (holding that the presence of a related case in the transferee forum is a "strong reason" to grant a change of venue); *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001) ("[C]ourts have found that the presence of related cases in the transferee forum is a reason to grant a transfer."). "In fact, courts in this

District have concluded that this factor alone is sufficient to warrant a transfer," even when the convenience of the parties and witnesses would point to a denial. *Simmens*, 2007 WL 2007977, at *2 (citation omitted) (collecting cases).

Here, both actions have similar claims, based on common factual allegations, with overlapping putative classes. In this case and in *Powell*, plaintiffs assert the same alleged defect with the L87 engine in the same vehicles. *Compare* Compl., ECF No. 1, ¶ 5-8 *with Powell* Am. Compl. ("*Powell* Compl."), ECF No. 15, ¶ 1. Both actions assert that the alleged defect affects the same makes and models of GM-manufactured vehicles. *Compare Powell* Compl. ¶ 37, with Compl. ¶¶ 5-8. Both actions allege that GM knew about the alleged L87 defect prior to sale of the Class Vehicles. *Compare* Compl. ¶¶ 56, 57 & 125, *with Powell* Compl., ¶¶ 4, 61. Both actions claim that GM breached both express and implied warranties. *Compare* Compl. ¶¶ 22-24, *with Powell* Compl. ¶¶ 477-496, 497-506. For these alleged breaches, both actions seek substantively identical damages. *Compare* Compl. at 72 ("Prayer for Relief"), with *Powell* Compl. at 202-203 ("Prayer for Relief").

Given the significant overlap in allegations, transfer will result in more efficient pre-trial discovery, conserve judicial resources, and avoid duplicative litigation and inconsistent results.

### D.    The Court Does Not Need to Defer to Plaintiffs' Initial Choice of Forum.

Since this is a class action and GM's Motion to Transfer to the Eastern District of Michigan is unopposed, the Court should give little deference to plaintiff's initial choice of forum. As courts in this district have found "where, as here, the plaintiffs seek to represent a class of many potential plaintiffs scattered across the country, plaintiffs' choice of forum deserves less weight." *See, e.g.*, *Supco*, 538 F. Supp. at 1192; *Impervious Paint Indus., Ltd. v. Ashland Oil, Inc.*, 444 F. Supp. 465, 467 (E.D. Pa. 1978); *Koster*, 330 U.S. at 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").

The presence of GM's headquarters in Michigan also diminishes any weight that would otherwise have been given to the initial forum selection. *See, e.g. Panitch*, 2017 WL 1333285, at *6 ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.") (quoting *Palagano v. NVIDIA Corp.*, No. CV 15-1248, 2015 WL 5025469, at *5 (E.D. Pa. Aug. 25, 2015) ("[I]n the context of claims based on misrepresentations or omissions, 'misrepresentations and omissions are deemed to occur in the district

where they were transmitted or withheld, not where they are received.'") (quoting

*Kerik v. Tacopina*, No. 14-488, 2014 WL 1340038, at \*5 (D.N.J. Apr. 3, 2014)).

**<u>CONCLUSION</u>**

For the foregoing reasons, GM respectfully requests that the Court transfer

this action to the United States District Court for the Eastern District of Michigan.

Dated: June 12, 2025                    Respectfully submitted,

/s/ *Kyle Nodes*
Kyle Nodes (336497)
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Fax: (215) 963-5001
kyle.nodes@morganlewis.com

April N. Ross (*pro hac vice forthcoming*)
Rachel Raphael (*pro hac vice forthcoming*)
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202)-739-3000
Fax: (202) 739-3001
april.ross@morganlewis.com
rachel.raphael@morganlewis.com

*Attorneys for General Motors LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 12, 2025 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Kyle Nodes*
Kyle Nodes
*Attorney for General Motors LLC*